# SUPPLEMENT.

## OPINION OF THE JUSTICES TO THE SENATE AND HOUSE OF REPRESENTATIVES.

Bonds were issued by the city of Boston under St. 1897, c. 500, on each of which under the requirement of that statute were stamped the following words: "East Boston Tunnel. The whole amount of the rentals for the use of and tolls for persons passing through the East Boston tunnel is pledged for the payment of the principal and interest of this loan." The statute provided that the city of Boston should collect from each person passing through the tunnel in either direction a toll of one cent, which under certain conditions might be reduced or abolished by the railroad commissioners on petition of ten citizens. *Held*, that the sale of the bonds with the above stipulation expressed on their face by direction of the Legislature created a contract with the purchaser of each bond which it was not in the power of the Legislature to impair; that the tolls referred to were those then established by law and that they could not be diminished without reducing the security to which the owners of the bonds were entitled.

In the stipulation on the face of the bonds issued to pay for the construction of the East Boston tunnel, stating as required by St. 1897, c. 500, § 17, that "the whole amount of the rentals for the use of and tolls for persons passing through the East Boston tunnel is pledged for the payment of the principal and interest of this loan," the words "the whole amount of the tolls" mean the net amount, and the city of Boston may deduct a reasonable charge for the cost of collection.

In the stipulation on the face of the bonds issued to pay for the construction of the East Boston tunnel, stating as required by St. 1897, c. 500, § 17, that "the whole amount of the rentals for the use of and tolls for persons passing through the East Boston tunnel is pledged for the payment of the principal and interest of this loan," the tolls pledged by the contract include the payments made by those who leave the tunnel without passing through the whole of it, and the Legislature has not the power to abolish the toll of one cent required from persons travelling in the tunnel between Scollay Square and Atlantic Avenue.

A certified copy of the following preamble and order adopted by the General Court was transmitted to the Justices of the Supreme Judicial Court on April 20, 1906:

Whereas, by the provisions of chapter 548 of the acts of the year 1894 and of chapter 500 of the acts of the year 1897 the Boston Transit Commission was commanded to construct for the city of Boston a tunnel or tunnels of sufficient size for two railway tracks, with approaches, entrances, sidings, stations and connections therefor, from a point in Boston, proper for a suitable connection with the then existing subway or subways, to a point at or near Maverick Square in East Boston, said act providing, among other things, that upon completion of said tunnel or tunnels said commission should execute a lease thereof in writing to the Boston Elevated Railway Company for the term of twenty-five years at an annual rental equal to three-eighths of one per cent of the gross receipts for each year of all lines owned, leased or operated by said corporation; and further providing that said city should collect from each person passing through said tunnel in either direction a toll of one cent, that under certain conditions set forth in the act the railroad commissioners might on petition of ten citizens reduce or abolish said tolls, and that the whole amount of said tolls and of said rentals should be pledged to meet the principal and interest of the bonds issued to pay for the construction of said tunnel or tunnels, this pledge to be expressed on the face of such bonds as one of the terms thereof; and

Whereas, said tunnel has been constructed in accordance with the provisions of said chapter 548 of the acts of the year 1894 and of said chapter 500 of the acts of the year 1897 and the amendments thereof contained in chapter 534 of the acts of the year 1902; and

Whereas, bonds have been issued and sold by the city of Boston to the amount of over three million dollars in accordance with the provisions of said chapter 500 of the acts of the year 1897, each of said bonds having stamped upon it the following words: "East Boston Tunnel. The whole amount of the rentals for the use of and tolls for persons passing through the East Boston tunnel is pledged for the payment of the principal and interest of this loan;" and

Whereas, said tunnel has been leased by the Boston Transit Commission in accordance with the terms of said acts; and

Whereas, the interest and sinking-fund requirements of said

bonds for the fiscal year ending February 1, 1906, were $142,815.09, while the amount received for rentals during said fiscal year was $35,398.22, the gross amount received from tolls $85,551.20, from which was deducted the cost of collecting the same, $13,635.39, leaving the net receipts from tolls $71,915.81, making receipts from both tolls and rentals for the fiscal year $107,314.03; and

Whereas, a bill has been presented to the Legislature, being Senate Bill No. 45, providing that no tolls or cash fares beyond the regular fare of five cents shall be demanded or collected by the city of Boston or by the Boston Elevated Railway Company from persons passing in either direction through the East Boston tunnel constructed under the provisions of chapter 548 of the acts of the year 1894 and of chapter 500 of the acts of the year 1897 and acts in amendment thereof; and

Whereas, the said tunnel has its westerly terminus in Scollay Square and there is a station between Scollay Square and Atlantic Avenue and one at Atlantic Avenue at which passengers may take and leave cars of the Boston Elevated Railway Company passing through the tunnel on the way to or from East Boston and the said toll of one cent is collected from every person who passes through any part of the tunnel between its two termini, however short the distance, and the city of Boston deducts from the gross amount of tolls the cost of collecting the same; and

Whereas, by section 19 of chapter 534 of the acts of the year 1902 it was provided that the city of Boston "shall have, hold and enjoy in its private or proprietary capacity, for its own property, the existing subway, the East Boston tunnel, the Cambridge Street subway and the tunnel and subway built under this act, and all rents, tolls, income and profits from all contracts heretofore or hereafter entered into for the use of said subways or tunnels or any part thereof, and the same shall never be taken by the Commonwealth except on payment of just compensation;"

Be it ordered, that a certified copy of this order and preamble be transmitted by the clerk of the Senate and the clerk of the House of Representatives, to the Justices of the Supreme Judicial Court and that the opinion of the said justices be

required by the Senate and the House of Representatives upon the following important questions of law: —

First: Considering the provisions of chapter 548 of the acts of the year 1894 and of chapter 500 of the acts of the year 1897, of chapter 534 of the acts of the year 1902, and the facts set forth in the preamble, is it within the constitutional power of the Legislature to abolish the tolls as provided in Senate Bill No. 45?

Second: Is it within the constitutional power of the Legislature to pass any bill abolishing the toll of one cent provided for by said acts?

Third: Is it lawful for the city of Boston to deduct the cost of collection from the gross amount of tolls collected?

Fourth: If all tolls cannot be abolished, is it within the constitutional power of the Legislature to pass a bill abolishing the toll of one cent exacted from persons travelling between Scollay Square and Atlantic Avenue?

On April 30, 1906, the Justices returned the following answer:

To the Honorable the Senate and the House of Representatives of the Commonwealth of Massachusetts:

We, the Justices of the Supreme Judicial Court, have received the order, a copy of which is hereto annexed, requesting our opinion upon four important questions of law, and we respectfully submit the following opinion.

Section 10 of article 1 of the Constitution of the United States contains this provision: "No state shall . . . pass any . . . *ex post facto* law, or law impairing the obligation of contracts, or grant any title of nobility," etc. Upon each of the bonds referred to, issued by the city of Boston in accordance with the provisions of the St. of 1897, c. 500, are stamped the following words: "East Boston Tunnel. The whole amount of the rentals for the use of and tolls for persons passing through the East Boston tunnel is pledged for the payment of the principal and interest of this loan." This statement, which was thus made a part of the contract on the faith of which purchasers have bought the bonds, was authorized and required by the statute. The fact that lies behind the state-

ment, namely, that the rentals and tolls are actually set apart and pledged as security for this payment, is also a requirement of the statute. We have therefore a contract which rests not only upon the agreement of the city, made for a valuable consideration, but upon the deliberate action and solemnly pledged faith of the Commonwealth. The tolls referred to are the tolls then established by law and they cannot be diminished without reducing the security to which the owners of the bonds are entitled. It is plain that the sale of bonds, carrying on their face this stipulation, creates a contract with each purchaser which it is not in the power of the Legislature to impair. We make this answer to the first and second questions.

The third question, "Is it lawful for the city of Boston to deduct the cost of collection from the gross amount of tolls collected," while less important, is more difficult than either of the first two. The words "whole amount of the . . . tolls" are broad enough to include the entire sums prescribed by statute and collected as tolls, without diminution for the cost of collection. But the law contemplates collection of these tolls by the Boston Elevated Railway Company, acting as the city's agent, and suggests payment of compensation for collecting. St. 1897, c. 500, § 17. We think that the purpose and intent of the statute are accomplished if the city retains as security the amount received for the tolls, less a necessary and reasonable allowance to the railway company for the collection of them. This is in accordance with the opinion of the Justices upon a similar question, as to whether the annual payment of one per cent of its income, which the Western Railroad Corporation was required by St. 1838, c. 9, § 3, to make to a sinking fund, was payable from its gross income or its net income. It was held that the percentage was to be reckoned on the net income. *Opinion of the Justices*, 5 Met. 596.

The fourth question refers to the fact that there are two stations on the tunnel, besides the stations at the termini, and some passengers who ride in the tunnel choose to leave the car without passing through the whole length of the tunnel. It may be that the construction of these intermediate stations

was not anticipated when the statute was enacted, and that it was not supposed that passengers would be able to pass through any part of the tunnel without going from one end of it to the other. However that may be, we are of opinion that the application of the statute, to the tunnel as it is, requires us to hold that one who takes a car and rides through a part of it, and then voluntarily leaves the car at an intermediate station, passes through the tunnel, within the meaning of the statute, and is liable to pay the prescribed toll. With any other construction of the statute it would be difficult, if not impossible, to make a distinction between different parts of the tunnel, or to say that tolls could be collected of any passenger who did not ride through the entire tunnel from end to end.

If the term "tolls" includes payments by those who leave the tunnel without passing through the whole of it, these are pledged by the contract, as well as the payments for rides through its entire length, and it is beyond the constitutional power of the Legislature to affect the rights of bondholders to this part of their security.

MARCUS P. KNOWLTON.
JAMES M. MORTON.
JOHN LATHROP.
JOHN W. HAMMOND.
WILLIAM CALEB LORING.
HENRY K. BRALEY.
HENRY N. SHELDON.